# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. _____

PHYSICAL THERAPY SPECIALISTS, P.C., a Colorado
   professional service corporation,

    Plaintiff,

v.

WELLS FARGO BANK, N.A., a federally chartered national
   bank,

      Defendant.

---

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff, PHYSICAL THERAPY SPECIALISTS, P.C. (hereafter, "P.T. Specialists"), a Colorado professional service corporation, brings this class action complaint on behalf of itself and those similarly situated against Defendant, WELLS FARGO BANK, N.A. ("Wells Fargo") to stop Defendant's conduct and to obtain redress for all persons and businesses injured by Defendant's conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences and, as to all other matters, upon information and belief:

## I.    Introduction

1.     In the past two months, COVID-19 has destroyed national commerce and shuttered countless businesses across virtually all sectors. Responding to mass layoffs occurring around the country—with the threat of far more to come—Congress created a program that would quickly

distribute money to small businesses like Plaintiff on a first-come, first-served basis. Time was of the essence.

2.      The legislature's plan to aid small businesses, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), was enacted into law on March 27, 2020.  In its initial form, the Small Business Administration's ("SBA") Paycheck Protection Program ("PPP") authorized up to $349 billion in forgivable loans to small businesses to cover payroll and other expenses.  This money was meant to provide a critical and immediate life raft to businesses who have been shut down pursuant to their state's "stay at home" order or have been effectively shuttered due to a dramatic drop-off in business.

3.      Speed and simplicity were to be the hallmarks of the PPP. The intent of the legislation was that small businesses and sole proprietorships would be able to apply through SBA-approved lenders as soon as the application window opened and wait their turn to be approved on a first-come, first-served basis.

4.      Defendant Wells Fargo, however, decided to ensure that the applications of its favored clients would be prioritized at the expense of the small business customers the PPP was designed to benefit.  This not only helped curry favor with the clients most important to Wells Fargo's bottom line, but would, because of the high loan amounts, generate more loan origination fees for Wells Fargo with less effort and expense.

5.      As a result, only a small percent of Wells Fargo's retail, "Small Business" customers that tried to apply for PPP loans were approved, while the majority of Wells Fargo's larger, "Commercial Banking" clients were approved.

6.      Worse, Wells Fargo concealed from the public that it was prioritizing the applications on a basis other than first-come, first served.  As a result, thousands of small

businesses, including Plaintiff in this action, trusted that Wells Fargo would process the applications in the order in which the applications were submitted and that they had an equal chance to have their application approved.

7.      Had Wells Fargo disclosed its self-serving prioritization, Plaintiff could have, and would have, submitted its PPP applications to other financial institutions that were actually processing applications on a first-come, first-served basis.

8.      As a result, thousands of small businesses, including Plaintiff, that were entitled to loans under the PPP were denied access to the funds because Wells Fargo failed to comply with the rules and the intent of the program—to serve the needs of its small business customers.

## II.    Parties

9.      Plaintiff, P.T. Specialists, is a Colorado professional service corporation with its principal place of business in Centennial, Colorado.  P.T. Specialists is a small business operating a physical therapy clinic. Trained and licensed therapist employees at P.T. Specialists provide patients with connective tissue mobilization, myofascial release, and administer additional modalities, such as rehabilitative ultrasound imaging, cold laser therapy, and iontophoresis.  P.T. Specialists meets the criteria for funding under the PPP. In reliance on Defendant's false and deceptive advertising, marketing, and loan application processing schemes, P.T. Specialists made its application for loan assistance through the PPP with Wells Fargo.

10.      Defendant, WELLS FARGO BANK, N.A., is a federally chartered national bank, with its main office in Sioux Falls, South Dakota. WELLS FARGO BANK, N.A. conducts substantial business in all counties within the State of Colorado.

## III.    Jurisdiction and Venue

11.    The Court has original jurisdiction over this Action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) the members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed Class Members exceed $5,000,000 in the aggregate.

12.    This Court has personal jurisdiction over Defendant because Defendant does business in this District and a substantial number of the events giving rise to the claims alleged herein took place in Colorado.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff applied for the subject PPP loans while in this District and Defendant marketed, promoted, and took applications for the PPP loans in this District.

## IV.    Factual Allegations

14.    In or around March of 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that their business would be seriously impacted by the COVID-19 crisis and the shelter-in-place orders, sought to obtain a PPP loan through a financial institution.

15.    On or about April 4, 2020, Plaintiff, P.T. Specialists, submitted a complete, thorough, and timely application to Wells Fargo to obtain PPP loan. Due to the failures of Defendant's systems, Plaintiff did not receive a confirmation email that the application was properly submitted until April 15th. The PPP program funds were exhausted the next day, on April 16th, and Plaintiff's loan was never funded by Wells Fargo.

16.     Plaintiff and the Class Members submitted complete, thorough, and timely applications to Wells Fargo to obtain PPP loans. After submitting the PPP loan applications, Plaintiff waited to get funded. While Plaintiff waited to get funded, they made strategic business decisions, made personnel decisions, and took other steps in reliance on Wells Fargo's obligation to process applications on a "first-come, first-served" basis.

17.     On information and belief, Wells Fargo did not follow the SBA Regulations or the intent of the U.S. Senate and Congress in distributing the PPP funds. Instead, Wells Fargo prioritized and moved high dollar applications from large and mid-sized companies to the "front of the line" in order to maximize their origination fees on these federally backed loans at taxpayer expense.

18.     Before it received even the first PPP application, Wells Fargo knew that it would receive more PPP applications than it would be able to process, and that it planned to give preferential treatment to larger applications, but concealed these facts from Plaintiff and the general public.

19.     Although Wells Fargo Bank, N.A. is only one bank, and is only one lender under the PPP program, internally it divides its business customers into at least two general tiers, "Commercial Banking" customers, and" Small Business" customers. Plaintiff was a "Small Business" customer.

20.     On information and belief, Well Fargo even established a separate line for "Small Business" customers, with retail level accounts, and an express lane for its larger" Commercial Banking" customers. As evidenced by Wells Fargo on its website at https://update.wf.com/coronavirus/paycheckprotectionprogram, Wells Fargo segregated incoming applications for PPP

funds on two separate tracks, one for its smaller, retail level," Wells Fargo Business Online" customers, and one for its larger "Commercial Electronic Office" customers.

21.     Wells Fargo unfairly enriched itself at the expense of Plaintiff and the putative class by fast tracking applications for large loans. This likely included dedicated staff, an expedited process, additional resources, and primarily not requiring those borrowers—their most valued customers regularly paying the most fees, interest, and other valuable consideration to Wells Fargo—to wait behind the applications of its "Small Business" customers, such as Plaintiff.

22.     Plaintiff and the putative Class Members it represents reasonably relied on Wells Fargo's affirmative representations, communications, and advertising in making the choice to apply for their one PPP loan through Wells Fargo, not knowing that, contrary to those representations, Wells Fargo would prioritize large borrowers, making it less likely that Plaintiff would be able to obtain a loan through the PPP. As a result of their reliance on Wells Fargo's representations, Plaintiff suffered economic harm. Had Plaintiff known that Wells Fargo was prioritizing large loans, Plaintiff could have avoided the harm by applying for a loan at a different bank, such as a local community bank.

23.     As a result of the conduct of Wells Fargo, Plaintiff's business, and those of the class it represents, suffered a myriad of financial harms, which in some instances include: wrongfully lost the opportunity to obtain funding that was likely to be forgiven by the federal government, lost the time value of those available PPP funds, lost access to capital in a difficult economic time, could not make payroll, and were forced to lay off or furlough talented and hardworking employees that the businesses had invested valuable training resources in, and generally lost economic opportunities to conduct business due to lack of operating capital.

V.    **Class Action Allegations**

24.    *The Class Definition*: Plaintiff, P.T. Specialists LLC, brings this action for itself

and on behalf of a class of similarly situated individuals, defined as follows:

> All Wells Fargo Business Banking account holders that are incorporated in or have
> a principal place of business in the State of Colorado that met the criteria for
> receiving a loan under the PPP who timely applied for, or attempted to apply for a
> PPP loan through Wells Fargo, whose applications were not processed and/or who
> were not issued loans in accordance with SBA Regulations (i.e. "first-come, first-
> served") and in accordance with the stated intent of the CARES Act (i.e. prioritizing
> "small business concerns and entities in underserved and rural markets, including
> veterans and members of the military community, small business concerns owned
> and controlled by socially and economically disadvantaged individuals").

25.    Excluded from the Class are Defendant, as well as its officers, employees, agents,

board members and legal counsel, and any judge who presides over this action (or spouse or family

member of presiding judge), as well as all past and present employees, officers and directors of

Wells Fargo.

26.    Plaintiff reserves the right to expand, limit, modify, or amend this class definition,

including the addition of one or more subclasses, in connection with Plaintiff's motion for class

certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts

obtained during discovery.

27.    *Numerosity*: The Class is composed of thousands of businesses, whose joinder in

this action would be impracticable. The disposition of their claims through this class action will

benefit all Class Members, the parties and the courts.

28.    *Existence and Predominance of Common Questions of Fact and Law*: There is a

well-defined community of interest in questions of law and fact affecting the Class. These

questions of law and fact predominate over individual questions affecting individual Class

Members, including, but not limited to, the following:

a.    Did Defendant comply with all applicable SBA Regulations in processing applications for PPP funds and in distributing PPP funds in Colorado?

b.    Did Defendant comply with their legal obligations under the terms of the CARES Act as third-party intermediary administrators of the PPP funds?

c.    Did Defendant have a policy and/or practice of prioritizing large PPP loans to larger businesses to the detriment of the putative class?

d.    Did Defendant process PPP loan applications on a "first-come, first-serve" basis?"

e.    Did Defendant process applications in the order received, or did large PPP loans get moved "to the front of the line?"

f.    Did Defendant utilize a faster, manual application process for select customers seeking large loans to maximize origination fees?

g.    Did Defendant prioritize maximizing its own profit over achieving the goals of the CARES Act and the PPP?

h.    Did Defendant's conduct constitute an "unfair business practice" under the Colorado Consumer Protection Act (CCPA), COLO. REV. STAT. § 6-1-105?

i.    Did Defendant's conduct constitute an "unconscionable business practice" under COLO. REV. STAT. § 6-1-105?

j.    Did Defendant's conduct constitute a "deceptive, deliberately misleading, false, or fraudulent act or practice" under COLO. REV. STAT. § 6-1-105?

k.    Did Defendant's conduct constitute false advertising under COLO. REV. STAT. § 6-1-105?

l.    Did the Defendant have a duty to disclose material information to the PPP loan applicants?

m.    Did Defendant disclose to the PPP applicants that the loan applications were not being processed on a first-come, first-served basis?

n.    Did Defendant possess exclusive knowledge of material facts, with respect to the PPP loan application process, that could not have been known to the Plaintiff or the public (i.e. that the loan applications were not being processed "first-come, first-served" or that the banks were prioritizing large borrowers)?

o.    Did Defendant actively conceal a material fact or facts from the Plaintiff (i.e. that the loan applications were not being processed "first-come, first-served" or that Wells Fargo was prioritizing large borrowers)?

p.    Did Defendant make a partial representation but also suppress some material fact or facts from the Plaintiff (i.e. that the loan applications were not being processed "first-come, first-served" or that the banks were prioritizing large borrowers)?

q.    Whether Defendant conduct, as alleged herein, was intentional and knowing?

r.    Whether Defendant conduct, as alleged herein, was reckless, pursuant to Colo. Rev. Stat. § 6-1-105?

s.    Whether Class Members are entitled to damages and/or restitution; and, if so, what is the amount of revenues and profits Defendant received and was lost by Class Members as a result of the conduct alleged herein;

t.      Whether Defendant is likely to continue to mislead PPP loan applicants and continue to violate SBA Regulations regarding processing and funding applications for PPP loans; and

u.      Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit.

v.      Whether Defendant was negligent in the performance of its duties owed to Plaintiff and Class Members under the terms of the CARES Act, as the third-party intermediary administrator of the PPP funds?

29.     *Superiority*. In engaging in the conduct described herein, Defendant has acted and failed to act on grounds generally applicable to Plaintiff and other Class Members.  Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward class members and to make injunctive or corresponding declaratory relief appropriate for all class members.   A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members 'claims. Few, if any, class members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendant would be permitted to retain the proceeds of their misdeeds.

30.     *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiff and the Class Members have all been deceived by Defendant's unfair, unlawful, and fraudulent PPP loan application and funding practices, as alleged herein. The factual and legal bases of Defendant's liability to Plaintiff and each Class Member are substantially similar, resulting in injury to Plaintiff and each Class Member as a result of Defendant's actions as described herein.

31.     *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class and Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and their counsel will vigorously prosecute this action on behalf of the class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other Class Members.

32.     *Ascertainability*: Plaintiff is informed and believe that Defendant keeps extensive computerized records of its loan applications through, inter alia, computerized loan application systems and Federally mandated recordkeeping.  Defendant has one or more databases through which a significant majority of Class Members, if not 100% of Class Members, may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## FIRST CAUSE OF ACTION
### Individually and on Behalf of the Class
### VIOLATION OF COLORADO CONSUMER PROTECTION ACT
### (COLO. REV. STAT. § 6-1-105)

33.     Plaintiff hereby incorporates by reference the foregoing allegations in paragraphs 1-28 as if fully set forth herein.

34.     Plaintiff asserts this cause of action on behalf of itself and members of the class pursuant to COLO. REV. STAT. § 6-1-113(1).

35.     The Colorado Supreme Court has held that to establish a private cause of action under the CCPA, a plaintiff must prove: (1) that defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation,

or occupation; (3) that the practice significantly impacted the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Hall v. Walter,* 969 P.2d 224 (Colo. 1998).

36.     The CCPA lists a large number of deceptive trade practices, and specifically includes  practices where a defendant "[e]ither knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" COLO. REV. STAT. § 6-1-105(1)(kkk).

37.     COLO. REV. STAT. § 6-1-105(1)(j) prohibits false advertising and includes as a deceptive practice where a defendant "[a]dvertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity." As set forth above, Wells Fargo knowingly and recklessly advertised the PPP Loans beyond any capacity it had to actually process the resultant applications and submit them to the SBA. Wells Fargo failed to disclose that it was overwhelmed, and completely unable to service the reasonably expectable public demand from its advertisements.

38.     COLO. REV. STAT. § 6-1-105(1)(u) includes as a deceptive practice where a defendant "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." As set forth above, Wells Fargo knowingly and recklessly failed to disclose that it was not processing applications on a "first-come, first served" basis, as required by the CARES act, and that, inasmuch, smaller applicants would not have their applications timely processed.

39.     Small Business Administration Regulations that govern the PPP funds, specifically SBA Interim Final Rule § m. [Docket No. SBA-2020-0015] 13 CFR Part 120, Business Loan Program Temporary Changes; Paycheck Protection Program, RIN 3245-AH34, mandated that the funds be distributed "first-come, first-served."

40.     Defendant has engaged in "unconscionable," "unfair" and "deceptive" representations to the public and their loan applicants as set forth above, including by making false statements of material fact with respect to the PPP application process.

41.     Defendant has further intentionally disregarded their legal requirement to distribute PPP funds on a "first-come, first-served" basis and in fact prioritized large businesses and allowed them to "jump the line" to the detriment of small business applicants and the members of the Class.

42.     As set forth above, the Defendant's conduct included affirmative representations about the loan approval process and the "focus" and "priorities" of the bank in processing and funding PPP loans which were not true. Those representations were made with the intent to generate public good will and to induce consumers to reasonably rely on those representations and choose Defendant when making their decision about who to make their PPP loan application through.

43.     Defendant's acts and practices as described herein have deceived Plaintiff and the Class Members and were highly likely to deceive members of the consuming public. Specifically, in deciding with which bank should they apply for a PPP loan, Plaintiff relied upon Defendant's misleading and deceptive representations regarding its loan application and approval process. Each of these factors played a substantial role in Plaintiff's decision to apply with Defendant, and Plaintiff would not have applied for PPP loans with Defendant in the absence of Defendant's misrepresentations. Had they applied at a different bank, Plaintiff and the Class Members could

have obtained PPP funding. Accordingly, Plaintiff has suffered monetary and economic loss as a direct result of Defendant's practices described above.

44.     Wells Fargo has violated the CCPA by subverting both the process and the intent of PPP loans through prioritizing large borrowers to the detriment of the "small business" applicants the funds were intended to support. Further, they have unfairly made representations to their PPP applicants and the public about the process which unfairly induced applicants to apply with Defendant, thereby inducing a greater volume of PPP applicants was to the financial benefit of Defendant, and at the expense of the applicants.

45.     These acts and practices were unfair because they generated undue public good will for Defendant, and caused Plaintiff, and the other members of the putative Class, to falsely believe that Defendant were focused on serving small businesses when they were not, and that the PPP loan applications were processed fairly and on a "first-come, first-served" basis using the program criteria—when they were not. Wells Fargo caused small business owners, some of whom the banks did profit from, to submit applications when in reality those PPP loan applications were "at the back of the line."  In this way, Defendant had many small business applications to choose from, including large borrower applications that it prioritized to maximize profits.

46.     The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighed any conceivable reasons, justifications, or motives of Defendant. By committing the acts and practices alleged above, Defendant engaged in unfair business practices within the meaning of the CCPA.

47.     Through its unfair acts and practices, Defendant has improperly obtained money from the federal government at the expense of Plaintiff and the Class Members.

48.     Through its false representations and unfair acts and practices, Defendant has improperly obtained money from the federal government at the expense of Plaintiff and the Class Members. Defendant's unfair acts and practices significantly impacted the public, as actual or potential consumers of Defendant's services, as third-party intermediary administrators of the PPP funds.

49.     Defendant made or caused one another to make false and misleading representations to Plaintiff and Class Members concerning the nature of the services they would be providing as PPP loan administrators. Defendant knew, or should have known, that the PPP applications would not be processed on a "first-come, first-served basis" and yet they represented to the contrary to their customers and to the public. Further, Defendant knew or should have known that the "focus" of the bank was not on facilitating loans to small businesses with, for example, less than 50 employees, yet they represented to the contrary to the public and their customers.

50.     Defendant's unfair acts and practices significantly impacted the public, as actual or potential consumers of Defendant's services, as third-party intermediary administrators of the PPP funds.

51.     Plaintiff and the Class Members have suffered damages. Due to the unfair acts and practices of Defendant, Plaintiff and the Class Members suffered injury in fact to a Plaintiff's legally protected interests.

52.     The violations of the CCPA by Defendant were fraudulent, willful, knowing, or intentional conduct that caused injury and thus constituted "bad faith conduct."

53.     The unfair and deceptive trade practices listed have had a significant impact on the public in that a large number of consumers that have been directly affected by the trade practice, the disparity between the sophistication and bargaining power of Defendant and the consumers

affected by the trade practice; and the trade practices have previously impacted consumers and continues to have significant potential to do so in the future.

54.      The court may award attorneys 'fees and, when the violation constitutes bad faith conduct, treble damages.

**WHEREFORE**, Plaintiff, on behalf of itself and the Class Members, demands the recovery of compensatory damages, treble damages, attorneys 'fees taxable as costs pursuant to C.R.S. § 6-1-113(2)(b), as well as all taxable court costs, from Defendant.

**SECOND CAUSE OF ACTION**
**Individually and on Behalf of the Class**
**FRAUDULENT CONCEALMENT**

55.      Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

56.      To establish a claim for fraudulent concealment, however, a plaintiff must prove (1) the concealment of a material existing fact that in equity and good conscience the defendant should have disclosed; (2) knowledge on the defendant's part that such a fact was being concealed; (3) ignorance of that fact on the plaintiff's part; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP, 420 P.3d 223, 234 (Colo. 2018).

57.      Due to the nature of the transaction and contemplated contract between them, Defendant owed a duty to Plaintiff and the Class to reasonably disclose facts material to that transaction and to not hide or obscure facts material to that transaction.

58.      Wells Fargo understood prior to the formal launch of the PPP that it would receive many thousands of applications as businesses rushed to the nation's largest bank to obtain a loan. It also understood that the pot of money allocated by Congress to fund the PPP loans would be

inadequate to satisfy demand, and that it intended to place its larger clients into a "fast lane" for loan processing, delaying the processing of others 'loans and at times discouraging applicants (even its own customers, such as Plaintiff and the Class Members) from applying.

59.     At all relevant times, Defendant possessed and had exclusive knowledge of material facts not known to the Plaintiff and Class Members, i.e. the knowledge of how the PPP applications were going to be processed, prioritizing large businesses borrowing large amounts of money and not first-come, first-served.

60.     At all relevant times, Defendant actively concealed those material facts from the public and their PPP loan applicants, by intentionally omitting to disclose such facts and by intentionally misleading the Plaintiff and Class Members with affirmative statements that were not true.

61.     Even if Defendant made some partial representations, Defendant still made efforts to suppress material facts and did not fully disclose and contextualize the material facts known only to them. By participating in an SBA loan program while concealing that it would not adhere to one of the program's most critical features—that loans would be processed in the order applications were received—it injured Plaintiff and the Class Members, who lost out on loans (or were forced to accept smaller loans to the extent they could be obtained) they would have otherwise received.

62.     Defendant intended, and Plaintiff and the Class Members reasonably relied upon, Defendant's representations in choosing to apply for a PPP loan with Wells Fargo. Wells Fargo's concealed materials facts about how it would conduct its processing of PPP loan applications where it otherwise had a duty to speak, as a major lender, SBA-affiliated lender, and an existing business partner. Had Wells Fargo been open and honest about its plans, Plaintiff and the Class

Members could have applied elsewhere for a loan and sought to work with an institution willing to follow the SBA's dictates for administration of the PPP.

63.    Wells Fargo's conduct, and its concealment of these material facts where there was a duty to speak, proximately caused Plaintiff's and the Class Members 'injuries. As a direct result of Defendant's fraudulent concealment of facts material to the PPP loan application transaction, Plaintiff and the Class Members were induced to apply with Defendant and as a proximate result suffered economic and financial harm to be proven at trial but in excess of $5 million.

**WHEREFORE**, Plaintiff, on behalf of itself and the Class Members, demands the recovery of compensatory damages, as well as all taxable court costs from Defendant, and all such other relief as may be granted by the Court.

### THIRD CAUSE OF ACTION
### Individually and on Behalf of the Class
### NEGLIGENCE

64.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

65.    In Colorado, the elements of a negligence claim consist of the following: a duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a proximate cause relationship between the breach and the injury. *Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316, 1320 (Colo. 1992).

66.    Wells Fargo owed Plaintiff and Class Members a duty to faithfully execute its responsibilities under the CARES Act, be truthful and forthcoming, limit the number of applications it accepted to those it could process faithfully and timely, and process the applications it received on a first-come, first-served, basis.

67.     Wells Fargo's breach of its statutory duty to process the applications it received on a first-come, first-served, basis is actionable by Plaintiff because Plaintiff is a member of the class the statute was designed to protect, to wit, small businesses. The injuries suffered by Plaintiff and Class Members are the type of injuries which the statute was enacted to prevent, such as losing out on much needed stimulus dollars in favor of larger businesses.

68.     By misfeasance, Defendant created a new risk of harm to Plaintiff and the Class Members in that Plaintiff would have had a fair chance of receiving a PPP loan if Wells Fargo limited the number of applications it accepted to those it could timely process, and if their applications were processed in the order they were received as required.

69.     Wells Fargo breached the standard of care for participant lenders under the CARES act by failing to act with reasonable care in light of the apparent risk. Wells Fargo decided to process applications in a manner that would inherently result in their not being processed in the order they were received—or as close to it as was reasonably feasible—but would instead privilege, and create a "fast lane," for its favored commercial clients.

70.     Wells Fargo's failure to be truthful and forthcoming, limit the number of applications it accepted to those it could process faithfully and timely, and process the applications it received on a first-come, first-served, basis was the proximate cause of Plaintiff's damages, and a substantial factor of sufficient significance, which produced the harms suffered by Plaintiff.

71.     Plaintiff has suffered damages as a result of Wells Fargo's negligence, which was reckless, willful and wonton, including lost or reduced value PPP loans, as well as the lost time value of money. Plaintiff, and other members of the Class will likely incur future damages caused by Wells Fargo's negligence.

**WHEREFORE**, Plaintiff, on behalf of itself and the Class Members, demands the recovery of compensatory damages, as well as all taxable court costs from Defendant, and all such other relief as may be granted by the Court.

### FOURTH CAUSE OF ACTION
### (Individually and On Behalf of the Class)
### TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATION

72.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

73.     One who intentionally and improperly interferes with another's prospective contractual relation is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995).

74.     Here, Plaintiff and the putative Class reasonably expected to enter into a valid business agreement to receive a loan backed and funded by the SBA—one that was critical to their survival during the COVID-19 pandemic.

75.     Significantly, although the loan papers would indicate that it was the lender, in fact, Wells Fargo, like all other PPP "lenders," was merely a facilitator—an intermediary between small businesses and the government that was providing the funds.  It had no discretion with regard to the terms of the loan or the qualifications of the borrowers.

76.     Defendant Wells Fargo was aware of the expectancy, to the extent it received a PPP loan application from Plaintiff and the putative Class Members or otherwise had direct and specific knowledge that they intended to apply for a PPP loan.

77.     Defendant Wells Fargo intentionally interfered in Plaintiff's and the putative Class Members 'prospective contractual relations by allowing other PPP loan applicants to cut in front of them in the application line, and indeed, by systematically prioritizing larger and more prestigious commercial clients over Plaintiff and the putative Class Members.

78.     As a proximate result of Wells Fargo's misconduct, Plaintiff and the putative Class Members were not able to obtain PPP loans they otherwise were qualified and entitled to receive or were only able to obtain much smaller loans elsewhere.

**WHEREFORE**, Plaintiff, on behalf of itself and the Class Members, demands the recovery of compensatory damages, as well as all taxable court costs from Defendant, and all such other relief as may be granted by the Court.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, requests for the following relief:

1.     For an order certifying the class as defined above, appointing Plaintiff as class representatives for the class, and appointing Plaintiff's counsel as class counsel for the class;

2.     For an order declaring Defendant's actions to be unlawful;

3.     For equitable relief to Plaintiff and Class Members;

4.     For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and Class Members and all other available relief under applicable law;

5.     For an award of treble damages pursuant applicable law;

6.     For reasonable attorney's fees and expenses as permitted by applicable statutes and

law;

7.     For taxable costs;

8.     For pre- and post-judgment interest as allowed by law; and

9.     For any other relief the Court deems just.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that are so triable.

Dated:  April 29, 2020.

**Ice Legal, P.A.**
*/s/ Ariane M. Ice*
Ariane M. Ice
Thomas Erskine Ice
20 Portsmouth Ave., Suite 1, No. 225
Stratham, NH 03885
Telephone: (603) 242-150
Email: ariane.ice@icelegal.com
*Attorney for Plaintiff*